IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 15-cv-02365-GPG

**MAURICE WILSON**,

      Plaintiff,

v.

**THERESA COZZA-RHODES;**
**M. RIOS;**
**ERIC EARWIN;**
**DONALD WILCOX;**
**JESSICA SEATON;**
**J. GARDNER;**
**PAUL ZOHN;**
**FEDERAL BUREAU OF PRISONS;**
**PAUL LAIRD;** and
**JOSE SANTANA**,

      Defendants.

---

### ORDER DIRECTING PLANTIFF TO FILE AMENDED COMPLAINT

---

Plaintiff, Maurice Wilson, is a federal prisoner in the custody of the Federal

Bureau of Prisons (BOP).  He currently is confined at the Florence High Penitentiary in

Florence, Colorado.  Mr. Wilson has filed pro se an Amended Prisoner Complaint (ECF

No. 13) pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971) claiming his rights under the United States Constitution

were violated.  He seeks damages and injunctive relief as relief.

The Court must construe the complaint liberally because Plaintiff is not

represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v.*

*Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court cannot act as an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  As part of the court's review pursuant to D.C.COLO.LCivR 8.1(b), the court has determined that the operative complaint is deficient.  For the reasons stated below, Plaintiff will be directed to file an amended complaint.

## I.  The Amended Complaint

In his Amended Complaint, Plaintiff makes the following allegations.  Eric Earwin is the Captain of the USP and supervises all of its officers.  M. Rios is his immediate superior.  Pursuant to BOP Program Statement 5310-16, BOP operates the Secure Stages Program, which is a Psychology Treatment Program for the treatment of Care Level 3 inmates with mental illness.  Assignment to Level 3 is an exhaustive, mutli-level review and involves clinical and non-clinical BOP employees.  Defendant Jose Santana, Chief of the Designations and Sentence Computation Center located in Grand Prairie, Texas, assigns final placement (ECF No. 8, p. 6, ¶ 8).  Upon admission to the program, an inmate's treatment is overseen by Defendant Jessica Seaton, the Stages program coordinator at Florence. Non-clinical operations are overseen by Defendant Lieutenant Donald Wilcox.  Starting in January 2015, Plaintiff moved into the STAGES program (Steps Toward Growth and Emotional Strength) at USP Florence.

Beginning in March of 2015, Defendants Wilcox and Seaton began a campaign of harassment involving verbal abuse and threats to expel plaintiff from the program if he did not drop his pending lawsuit at Civil Action No. 14-00421 (MSK).[1]  He claims that

---

[1]    In that action, Mr. Wilson alleges that on November 2, 2013, a use-of-force team was dispatched to his cell after he held open his cell door food slot and requested

Defendants Cozza-Rhodes, Rios, Earwin and Laird have fostered a culture of retaliation against inmates who engage in protected litigation activity. He further claims that his therapist stated she was going to manipulate Plaintiff's care level to reduce his access to psychological services to assist Wilcox and Seaton. As a result of Plaintiff's mental illness and the constant harassment, Plaintiff became suicidal and began a regressive spiral of behavior and self harm. He further claims that Defendants Seaton and Cozza-Rhodes expelled him from the program in April of 2015 and placed him in the Solitary Confinement unit (SHU).

Defendant Gardner is a SHU Lieutenant responsible for housing assignments and supervision of day-today activities and services in the SHU (Am. Compl. ¶ 16). Plaintiff complains that he did not have daily access to medical care, did not receive a single SRO hearing, received only one hour per week of recreation, had no cellmate and received a clean set of clothing only once every fourteen days (Am. Compl. ¶ 17). He complains that when he asked for Jeremy Pinson as a cellmate, he was told that

---

to speak with a lieutenant, as well as somebody from the psychology department concerning his mental health problems. When the use-of-force team arrived at Plaintiff's cell, the team members, including Defendant O'Shaunessy, deployed "four (4) cans of O.C. pepper spray, two (2) [illegible] grenades, a high powered paint ball gun with balls of powder pepper spray, an [sic] K-8 gun (military style grenade launcher) that shoots hard rubber rounds, and a steel battering ram" that were all used on Plaintiff. Plaintiff lay down on his cell floor and covered his face. At that point, Defendants struck his body with their elbows, knees and fists and tried to gouge his eyes, causing him extreme pain. A metal object was used to press hard into the pressure points of his face. Another metal object was used to tear skin from his left hand and inner bicep area. He was beaten for several minutes before he was handcuffed, his clothes were cut off, and he was drug out of his cell bleeding. Presently pending in that action are two motions for preliminary relief requesting appointment of counsel and to enjoin Defendants from retaliating against him for reopening his case. Defendants' responses to the Motions for Preliminary Injunction were filed on December 3, 2015. Plaintiff filed a Motion to Amend on December 7, 2015 (ECF No. 55).

Defendant Cozza-Rhodes has enforced a strict racial seperation.

He further alleges that Defendant Zohn was responsible for weekly psycho-therapy sessions, monthly SHU reviews and six-month comprehensive restrictive mental health reviews.  He states that she was wholly uncooperative with creating a collaborative individual treatment plan and even mocked Plaintiff's mental illness from April to November of 2015 (Am. Compl. ¶ 20).

Mr. Wilson's seeks to impose liability for violations of his First, Eighth and Fourteenth Amendment rights.  His First Amendment claim alleges retaliation for filing and pursuing his previous lawsuit.  To state a claim upon which relief can be granted for First Amendment retaliation, Plaintiff must plead facts indicating that he can plausibly prove three elements at trial:  1) that Plaintiff was engaged in constitutionally protected activity; 2) Defendants' actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) that Defendants' adverse actions were substantially motivated by Plaintiff's exercise of constitutionally protected conduct.  *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).  To prevail on the causation element of a claim for retaliation, Plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers ... would not have taken place."  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  That is, "it is imperative that [P]laintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice; [P]laintiff[ ] must, rather, allege specific facts showing retaliation because of the exercise of ... constitutional rights."  *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *accord Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal

belief that he is the victim of retaliation.").  It is not the role of the federal judiciary to

scrutinize and interfere with the daily operations of a state prison and the restriction on

retaliation does not change this role.  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir.

1990).  Simply by engaging in protected activity an inmate does not become inoculated

from the normal conditions of confinement experienced by convicted felons serving time

in prison.  *Id*.  Thus, a prisoner alleging retaliation must prove that but for the retaliatory

motive, the incidents he claims were retaliatory, including disciplinary action, would not

have taken place.  *Id*. at 949–50.  In addition an inmate must allege specific facts

showing retaliation because of the exercise of the prisoner's constitutional rights.

*Peterson*, 149 F.3d at 1145.  Thus, to establish a retaliation claim Plaintiff must

demonstrate:  1) he was engaged in constitutionally protected activity; 2) defendant's

actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness

from continuing to engage in that activity; and 3) defendant's adverse action was

substantially motivated as a response to plaintiff's exercise of constitutionally protected

conduct.  *Allen v. Corrections Corp. of America*, 524 F. App'x 460, 463 (10th Cir. 2013).

The Eighth Amendment requires prison officials to "take reasonable measures to

guarantee the safety of the inmates" and are liable for failing to protect an inmate if they

are deliberately indifferent to a substantial risk of serious harm.  *Farmer v. Brennan*, 511

U.S. 825, 832 (1994) (quotation omitted).  Establishing an Eighth Amendment

conditions-of-confinement claim requires a showing that: (1) objectively, the deprivation

was "sufficiently serious so as to deprive inmates of the minimal civilized measure of

life's necessities . . . . [or] so as [to] constitute a substantial risk of serious harm," and

(2) subjectively, the defendants "act [ed] or fail[ed] to act with deliberate indifference to

inmate health and safety." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001)
(internal quotations omitted).  Deliberate indifference means that "a prison official may
be held liable . . . only if he knows that inmates face a substantial risk of serious harm
and disregards that risk by failing to take reasonable measures to abate it." *Farmer*,
511 U.S. at 847.   "An official's failure to alleviate a significant risk of which he was
unaware, no matter how obvious the risk or how gross his negligence in failing to
perceive it, is not an infliction of punishment and therefore not a constitutional violation."
*Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

It appears that Plaintiff may be asserting an Eighth Amendment claim concerning
his mental health treatment.  This Court notes that the Defendants in his pending action
have submitted statements that Plaintiff was removed from his programing due to
disruption and that Plaintiff is under further evaluation for a transfer to another facility.
Moreover, it appears that Plaintiff has not exhausted this claim.  To the extent that he
claims that the conditions of confinement in the SHU violate the Eighth Amendment, he
fails to state a claim.  His conclusory allegations do not suffice to demonstrate a serious
deprivation of the basic necessities of life.  Moreover, he must have exhausted any such
claim before this Court can review his claim.

Plaintiff also cites the Fourteenth Amendment as a basis for liability.  Plaintiff's
due process claim depends upon the existence of a constitutionally protected liberty
interest.  It is unclear exactly what protected liberty interest Pplaintiff is asserting in this
action.

The complaint is deficient because it does not comply with the pleading
requirements of Rule 8 of the Federal Rules of Civil Procedure.  The twin purposes of a

6

complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the Court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief.  *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989).  The requirements of Fed. R. Civ. P. 8 are designed to meet these purposes. *See TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992).  Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought."  The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct."  Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules.  Prolix, vague, or unintelligible pleadings violate Rule 8.

Claims must be presented clearly and concisely in a manageable format that allows a court and a defendant to know what claims are being asserted and to be able to respond to those claims.  *New Home Appliance Ctr., Inc., v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957).  For the purposes of Rule 8(a), "[i]t is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis."  *Id.*

The Court has reviewed the Complaint and finds that Plaintiff fails to provide a short and plain statement of his claims in compliance with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Plaintiff fails to provide a short and plain

7

statement of his claim showing he is entitled to relief because he fails to provide specific factual allegations with respect to each constitutional violation in support of his individual claims.

A decision to dismiss a complaint pursuant to Rule 8 is within the trial court's sound discretion.  *See Atkins v. Northwest Airlines, Inc.*, 967 F.2d 1197, 1203 (8th Cir. 1992); *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969).  The Court, however, will give Plaintiff an opportunity to cure the deficiencies in the Complaint by submitting an Amended Complaint that meets the requirements of Fed. R. Civ. P. 8.

Plaintiff is required to assert personal participation by properly named defendants in the alleged constitutional violation.  *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  **To establish personal participation, Plaintiff must show in the Cause of Action section of the complaint form how each named individual caused the deprivation of a federal right**.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

Furthermore, **TO STATE A CLAIM IN FEDERAL COURT PLAINTIFF MUST EXPLAIN (1) WHAT A DEFENDANT DID TO HIM; (2) WHEN THE DEFENDANT DID IT; (3) HOW THE DEFENDANT'S ACTION HARMED HIM; AND (4) WHAT SPECIFIC LEGAL RIGHT THE DEFENDANT VIOLATED AS TO EACH AND EVERY CLAIM.** *Nasious v. Two Unknown B.I.C.E. Agents*, 492  F.3d 1158, 1163 (10th Cir. 2007) (noting that, to state a claim in federal court, "a complaint must explain what each defendant did

8

to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated"). Accordingly, in the Amended Complaint, Plaintiff must allege specific facts to show how each named Defendant personally participated in an alleged deprivation of his constitutional rights. Plaintiff has failed to sufficiently comply with this requirement, *i.e.*, no dates, no specific instances alleged by specific defendants, *etc*.

A defendant also may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Furthermore,

> when a plaintiff sues an official under *Bivens* or § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well.

*Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677). Therefore, in order to succeed against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199. Therefore, Plaintiff should name as Defendants only those persons he contends actually violated his federal rights while acting under color of law.

Moreover, under the PLRA, Mr. Wilson was required to exhaust completely his available administrative remedies prior to bringing his claims in federal court. "Since the

PLRA makes exhaustion a precondition to filing a suit, an action brought before administrative remedies are exhausted must be dismissed...." *Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (an "inmate who begins the grievance process but does not complete it is barred from pursuing a ... claim under the PLRA for failure to exhaust his administrative remedies.").

Exhaustion in cases covered by § 1997e(a) is not within the court's discretion, but is mandatory. "[E]xhaustion requirements are designed to . . . give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Full and proper exhaustion of administrative remedies is required, and entails utilizing "all steps that the agency makes available, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90.

The administrative remedy process available to inmates in federal custody is the BOP's Administrative Remedy Program. The BOP employs a four-step process to address inmate claims. First, inmates must attempt to informally resolve the issue before filing a request for administrative remedy. 28 C.F.R. § 542.13(a). Second, if an inmate is unable to informally resolve his complaint, he may file a formal written complaint (form B-9), within 20 calendar days of the date on which the basis of the complaint occurred. 28 C.F.R. § 542.14(a). The inmate must date and sign the request and submit it to the institutional staff member designated to receive such requests (ordinarily a correctional counselor). 28 C.F.R. § 542.14(c)(4). The warden has 20 calendar days in which to respond. 28 C.F.R. § 542.18. If an inmate is not satisfied with the warden's response, he may submit an appeal on form B-10 to the Regional

Director within 20 calendar days from the date of the warden's response.  28 C.F.R. § 542.15(a).  The Regional Director has 30 calendar days in which to respond.  28 C.F.R. § 542.18.  Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the General Counsel within 30 calendar days from the date of the Regional Director's response.  28 C.F.R. § 542.15(a).  The General Counsel has 40 calendar days to respond.  28 C.F.R. § 542.18.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.  Id.

Where an inmate reasonably believes a matter is sensitive and would endanger his safety or well-being if its substance were widely known, the inmate may submit his initial complaint directly to the Regional Manager instead of the Warden.  28 C.F.R § 542.14(d).   The inmate must clearly mark "Sensitive" upon the request and explain, in writing, the reason for not submitting it at the institution.  If the Regional Administrative Remedy Coordinator agrees that the request is sensitive, the request is accepted; otherwise, the request is not accepted and the inmate is advised in writing of that determination.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden, who shall allow a reasonable extension of time for such a resubmission.  *Id.*

The general rule that *pro se* pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  Therefore, Plaintiff must file an amended complaint if he wishes to pursue his claim in this action.  Accordingly, it is

11

**ORDERED** that **within thirty days from the date of this Order**, Plaintiff shall file a second amended complaint that complies with this Order.  It is

**FURTHER ORDERED THAT PLAINTIFF SHALL ATTACH COPIES OF ALL GRIEVANCES, INCLUDING ALL APPEALS AND RESPONSES, HE HAS FILED WITH RESPECT TO HIS CLAIMS.  FAILURE TO INCLUDE COPIES OF ALL GRIEVANCES AND RESPONSES THERETO SHALL RESULT IN DISMISSAL**.

**FURTHER ORDERED** that Plaintiff shall obtain the Court-approved Complaint form, along with the applicable instructions, at www.cod.uscourts.gov, to be used in filing the amended complaint.  It is

**FURTHER ORDERED** that if Plaintiff fails to comply with this Order within the time allowed the Court will dismiss the action without further notice.

DATED December 14, 2015, at Denver, Colorado.

BY THE COURT:

 /s Gordon P. Gallagher
Gordon P. Gallagher
United States Magistrate Judge